UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

TEASIA MARTIN,

                              Plaintiff,

       -against-

WALGREEN CO., DUANE READE INC.,
ALAMGIR KABIR, *Individually*, MICHAEL
GEYER, *Individually*, VIVIAN GHOBRIAL,
*Individually*, and MIKE CONWAY, *Individually*,

                              Defendant.

------------------------------------------------------------- X

**ORDER AND OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

16 Civ. 9658 (AKH)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/9/18

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiff Teasia Martin brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I and II), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–101 *et seq.* (Count III, IV, V, VI), alleging that her employer, Defendants Walgreen Co. and Duane Reade Inc. (together "Duane Reade"),[1] and her managers and supervisors, Defendants Alamgir Kabir, Michael Geyer, Vivian Ghobrial, and Mike Conway, engaged in unlawful discriminatory and retaliatory practices. In particular, Martin alleges that, beginning around May 2015, after working for Duane Reade since 2007, her coworkers would "harass Plaintiff Martin by holding their noses with two fingers whenever she walked by them, suggesting that Plaintiff Martin smells. Each time this would occur, everyone who was present, including Defendant Kabir, would then all begin to laugh." Complaint at ¶ 26. Plaintiff logged various complaints with her supervisors about these workplace issues. On October 27, 2015, Plaintiff and coworker Dilruba Khanam had a verbal and physical altercation

---

[1] Walgreen and Duane Reade have common management and share centralized control of labor relations. Complaint at ¶ 11.

while servicing customers at the Duane Reade store where they worked. Martin's employment was suspended on November 2, 2015, and ultimately terminated on November 23, 2015.

Defendants now move for summary judgment, *see* Dkt. No. 37, arguing that they took appropriate action in response to Plaintiff's complaints, and that they ultimately terminated Plaintiff because of her unprofessional conduct on October 27, a legitimate non-discriminatory and non-retaliatory reason.

I agree with Defendants. There are no material issues of fact, and, for the reasons described below, I grant Defendants' motion and give judgment to Defendants. Defendant Ghobrial has never been served in this case, and Defendant Kabir, who is no longer represented by counsel, did not join in the instant motion for summary judgment. I find, however, that the arguments presented herein apply equally to all Defendants, and I therefore dismiss the Complaint in its entirety.

## COMPLAINT

*Background*

Plaintiff Teasia Martin began working for Duane Reade in 2007 at the 385 Fifth Avenue location, and worked there until her termination in 2015. *See* Rule 56.1 Statements at ¶ 1.[2]

Since 2014, Defendant Kabir has been the store manager at 385 Fifth Avenue. ¶ 11. Since 2011, Dilruba Khanam has been the head cashier, but Khanam did not have supervisory authority over Martin. ¶¶ 13–14. Khanam, Chanmatie Rampersaud, and Babul Shakar were Martin's coworkers.

Around May 2015, Martin approached Khanam about her belief that Shakar "held his nose at Martin." ¶ 15. Later that day, Martin met with Kabir, and with assistant store managers

---

[2] Unless otherwise noted, paragraph symbols ("¶") refer to paragraphs in Defendants' Statement of Undisputed Facts, Dkt. No. 37, and corresponding paragraphs in Plaintiff's Opposition Statement, Dkt. No. 44. Unless otherwise notes, the stated facts are not disputed by the parties.

Gus Geter and Ahsan Nasimul, to discuss Martin's allegations. ¶ 20. The managers reviewed the store's video footage, which did not corroborate Martin's allegations, and no actions were taken against Shakar. ¶¶ 21–22.

About two days later, Martin claimed to Khanam that Rampersaud was touching her nose when Martin passed by. ¶ 25. Martin did not complain to management about these allegations. ¶ 27.

About two weeks later, Martin accused Khanam of holding her nose at Martin. ¶ 28. Khanam averred that that she could not have touched her nose since both she and Martin were at their own registers. ¶ 29. Khanam, Martin, and the assistant store managers discussed the incident that day. ¶ 30. The following day, Martin "hugged Khanam and apologized for the day before." ¶ 34.

At some (unidentified) later date, Kabir spoke with Martin about the nose-holding allegations. ¶ 43. Martin could not provide dates and times of, or witnesses to, the alleged incidents. ¶¶ 44–45. Kabir advised Martin and Khanam not to argue with one another. ¶ 50. Kabir also consulted with Human Resources Generalist Vivian Ghobrial on how to proceed. ¶ 53.

On July 1, 2015, Martin reached out to her Union, Local 338 RWDSU/UFCW, to discuss the coworker issues she was having. ¶ 56. Martin spoke with Union Representative Holly Hanrahan in mid-July 2015 during Hanrahan's visit to the store. Hanrahan contacted Defendant Geyer of Human Resources. ¶ 64. Geyer did not cover the 385 Fifth Avenue location, and he did not know Martin. ¶ 65. Hanrahan then reached out to Ghobrial. ¶ 66.

On July 17, 2015, Ghobrial spoke with Kabir about Martin's allegations. ¶ 68. On July 20, Ghobrial notified Martin that she would be handling Martin's complaints. ¶ 70. Ghobrial and Martin met in person to discuss the complaints. ¶ 72. Ghobrial testified that "the only thing

that [Martin] mentioned was [Khanam] holding her nose. She didn't mention any other complaints, just her holding her nose, that's it." ¶ 73.

Ghobrial investigated Martin's complaints and spoke with other employees at the store. ¶ 80. Ghobrial concluded that Martin's allegations were unfounded. ¶ 84. Ghobrial told Martin that, if she had any issues, she should speak with the store manager, the union representative or Ghobrial, but not with Khanam. ¶ 87. Ghobrial provided Martin with the option to transfer to a different store location. Martin declined the offer.

Soon after speaking with Ghobrial, Martin reached out to Defendant Michael Conway, the District Manager of Pharmacy and Retail Operations for Duane Reade. ¶ 91. Per Conway's request, Martin sent a letter dated July 27, 2015, which detailed her allegations that her coworkers, including Shakar and Khanam, were holding their noses at her and making fun of her, and that the store manager would "laugh as if it was funny." ¶¶ 96, 101. In the letter, Martin also alleges that a "female co-worker" (presumably Khanam") called Martin a "monkey." ¶ 98. Martin forwarded the letter to Ghobrial, and Ghobrial investigated the allegations in the letter. Khanam denied calling Martin a "monkey." ¶ 111.

*October 27 Incident*

A few months later, on October 27, 2015, there was an incident between Martin and Khanam. Martin was speaking with a coworker while a customer was waiting to be serviced. ¶ 122. Khanam asked Martin and the other coworker whether they were "blind." ¶ 123. In the ensuing moments, there was a verbal and near-physical altercation between Martin and Khanam. Martin yelled profanities at Khanam, accused her of having sex with her managers, came behind the register where Khanam was standing, and invaded her physical space. ¶¶ 124, 127. A coworker, Rampersaud, stood between Martin and Khanam to prevent a physical fight from following. ¶ 132. A surveillance video, reviewed by the Court and attached as Exhibit Y to the

Declaration of Aaron Warshaw, Dkt. No. 40, recorded the incident. Assistant store manager Geter sent Martin and Khanam home for the day. ¶ 135.

*Suspension of Martin*

On November 2, 2015, after confirming with Ghobrial, Kabir suspended Martin and Khanam over their unprofessional conduct on October 27, 2015. Ghobrial investigated the October 27 incident, and contacted Hanrahan. ¶ 145–46.

Following her suspension, Martin sent a letter to Duane Reade's Human Resources Department (November 2nd Letter) and, on the same day, filed a complaint with the New York State Department of Labor (NYSDOL Complaint). ¶ 147–48. The Letter and Complaint mirrored the complaints Martin made in her July 27th Letter, and further alleged that Khanam called Martin a "black dog" and a "prostitute" during the October 27 incident. ¶ 151.

The November 2nd Letter was forwarded to Ghobrial who investigated the allegations. No witnesses to the October 27 incident recounted hearing Khanam use the terms "black dog" or "prostitute." ¶ 153.

Khanam, who had also been suspended, contacted her union representative (Hanrahan), who reached out to Ghobrial to discuss Khanam's suspension. ¶ 154. Khanam, Ghobrial, and Hanrahan met on November 9, 2015, and Ghobrial questioned Khanam about Martin's name-calling allegations, which Khanam denied. ¶ 155–158. Khanam claimed that Martin had called *her* those names, and that Martin was the aggressor in the altercation. *Id.* Notwithstanding Khanam's denials, Ghobrial recommended that she be terminated for unprofessional conduct in arguing in front of customers. ¶ 159. Hanrahan disagreed with Ghobrial's decision, and, after bringin the matter to Vice President of Local 338 Jack Caffey and to Ghobrial's manager Paul Logosso, achieved a reconsideration of Ghobrial's decision to terminate Khanam. ¶ 160–166. Khanam returned to work on November 24, 2015. ¶ 167.

*Termination of Martin*

On December 1, Ghobrial recommended to Kabir, Conway, and Logosso that Martin's employment be terminated. ¶ 172. Martin was terminated on December 2. ¶ 173.

A grievance meeting was held between Ghobrial, Martin, and Lisa Polise (who replaced Hanrahan as Martin's union representative) on December 8. ¶ 177. Following the meeting, Martin's employment was not reinstated. ¶ 182.

Martin testified that both her race and national origin are "black." ¶ 192.

*Claims*

The Complaint contains six causes of action: unlawful discrimination under Title VII, 42 U.S.C. § 2000e *et seq.* (Count I); retaliation under Title VII (Count II); discrimination under the New York City Human Rights Law (NYCHRL), N.Y. Administrative Code § 8-107(1) *et seq.* (Count III); retaliation under NYCHRL (Count IV); aiding abetting discriminatory practices under NYCHRL, § 8-107(6) (Count V); and employer liability for employees' discriminatory conduct under NYCHRL, § 8-107(13) (Count VI).

## LEGAL STANDARD

A court should grant summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence in the light most favorable to the party opposing summary judgment ... draw all reasonable inferences in favor of that party, and ... eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). However, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation to defeat the summary judgment motion. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

## DISCUSSION

### I.  *The Discrimination Claims are Dismissed*

#### a. *Legal Standards*

"All of [Plaintiff's] claims, save her claim under the NYCHRL, are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Simmons v. Akin Gump Strauss Hauer & Feld, LLP*, 508 F. App'x 10, 12 (2d Cir. 2013). "Under the *McDonnell Douglas* framework, [Plaintiff is] required to make out a prima facie case of discrimination by showing: (1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) circumstances giving rise to an inference of discrimination on the basis of her membership in that class." *Id.*

If a plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action or termination. *See McDonnell Douglas*, 411 U.S. at 802–03. "If the defendant bears its burden of production, the presumption drops out of the analysis and the defendant will be entitled to summary judgment ... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) (internal citations and quotation marks omitted). To do so, Plaintiff must produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason" for the challenged actions. *Van Zant v. KIM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (internal quotation marks omitted).

"[Plaintiff's] claim under the NYCHRL requires an independent analysis, as the New York statute, amended by the Local Civil Rights Restoration Act of 2005, was intended to provide a remedy reaching beyond those provided by the counterpart federal civil rights laws. To prevail on its motion for summary judgment, the [Defendant is] required to meet its burden of showing that, based on the evidence before the court and drawing all reasonable inferences in [Plaintiff's] favor, no jury could find that the [Defendant] treated [Plaintiff] 'less well' than other employees at least in part because of her race." *Simmons*, 508 F. App'x at 1 (quoting *Williams v. N.Y.C. Hous. Auth.*, N.Y.S.2d 27, 39 (1st Dep't 2009)).

"In assessing the inferences that may be drawn from the circumstances surrounding a termination of employment, the court must be alert to the fact that [e]mployers are rarely so cooperative as to include a notation in the personnel file that their actions are motivated by factors expressly forbidden by law." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal quotation marks omitted). "[C]aution must be exercised in granting summary judgment where intent is genuinely in issue . . . ." *Id.* at 40. The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Id.*

### b. Application

Defendants have adequately rebutted Plaintiff's prima facie case (if any) of racial discrimination by articulating a legitimate non-discriminatory reason for their business decision. Plaintiff engaged in unprofessional conduct on October 27, 2015, which led immediately to her

suspension and ultimately to her termination. Plaintiff has not produced evidence to support a rational finding that "the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason" for the challenged actions. *Van Zant*, 80 F.3d at 714. Ghobrial, who recommended that Martin be terminated, also recommended that Khanam be terminated. That Khanam was ultimately reinstated does not cast doubt on the conclusion that Defendants had a legitimate reason to terminate Martin. In fact, Martin concedes in her brief that her termination was motivated by nondiscriminatory reasons.[3] This admission is fatal to Plaintiff's discrimination claims.

To support her discrimination claims, Plaintiff points not to her termination, which she concedes was not motivated by discrimination, but to the comments of Khanam and Kabir, which Martin refers to as the "adverse employment actions." But such comments are not *themselves* employment actions. They are best analyzed under the hostile work environment framework discussed below.

## II. *The Hostile Work Environment Claims are Dismissed*

### a. *Legal Standards*

"A hostile work environment claim requires a showing (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)).

---

[3] "In their motion, Defendants argue that Ms. Martin's employment was terminated for a legitimate non-discriminatory reason, i.e., violation of company policy and due to her own misconduct. However, Ms. Martin has not alleged that Defendants' decision to terminate her employment was due to Defendants' discriminatory animus. Plaintiff does not allege that she has suffered discriminatory termination, but suffered a retaliatory termination. . . . Ms. Martin does allege that he adverse employment action she suffered were Khanam's and Defendant Kabir's racially discriminatory comments, discussed *supra*." See Opposition at 8.

9

"The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.* The Second Circuit has "directed courts to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[A] plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted' to have altered the conditions of her working environment." *Alfano*, 294 F.3d at 374 (internal quotation marks omitted).

### b. *Application*

Martin alleges that Defendants created a hostile work environment,[4] pointing to (a) her coworkers holding their noses at Martin; (b) Kabir's single comment around July 2015 calling Martin a "monkey"; and (c) Khanam's single comment on October 27 calling Martin a "black dog." Reviewing the record in the light most favorable to Plaintiff, as I discuss below, I cannot find that the work environment was "sufficiently severe or pervasive to alter the conditions" of employment. Nor can I find a specific basis for imputing the objectionable conduct to the employer.

---

[4] The Complaint does not specifically allege hostile work environment, but only "discrimination" under Title VII and NYCHRL. Read liberally, I construe the Complaint to include the (associated) hostile work environment claims.

When she met with Kabir in the summer of 2015, Plaintiff was unable to provide specific dates or times of the alleged nose-holding, and Plaintiff has similarly not furnished the record with such details. Martin testified to a few instances of her coworkers holding their noses, but in each instance the coworkers denied the allegations and the supervisors met with the respective coworkers to investigate the allegations. Martin was consistently in touch with Ghobrial who offered Martin the opportunity to transfer locations. Further, regarding the comments by Kabir and Khanam, such sporadic comments, alleged to have each occurred only once, are not "pervasive" enough to create a hostile work environment. I consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher*, 524 U.S. at 787–88. I cannot say that these scattered incidents "altered the conditions" of employment or that they were anything more than "offensive," as opposed to discriminatory, conduct and speech. Nor can I say, even under the broader standards of NYCHRL, that Martin was treated "less well" on the basis of her race.

Furthermore, a plaintiff must also show a basis for imputing the conduct to the employer. *Alfano*, 294 F.3d at 373. Where "the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010). "[W]hen the harassment is attributable to a coworker, rather than a supervisor, ... the employer will be held liable only for its own negligence. Accordingly, [the plaintiff] must demonstrate that her employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (internal citations and quotation marks omitted).

11

Here, while Kabir was a supervisor, Khanam and the other coworkers were not. When the actions of such coworkers were brought to Duane Reade's attention, it proceeded with appropriate action and initiated investigations through the various managers and personnel. Any discriminatory action by the employees cannot be imputed here to the employer.

For much the same reasons, Count VI of the Complaint, seeking to hold the employer liable under NYCHRL § 8-107(13)(b) fails. Section 8–107(13)(b) imposes vicarious liability on an employer for discriminatory acts by its employees or agents where: "(1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct." Plaintiff has failed to raise a triable issue of fact that the employer acquiesced to discriminatory conduct or failed to exercise reasonable diligence to prevent it.

### III. *The Retaliation Claims are Dismissed*

#### a. *Legal Standards*

Retaliation claims are also analyzed under the burden shifting framework of *McDoddell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of retaliation by showing that (1) he was engaged in protected activity; (2) the defendant was aware of the protected activity; (3) he suffered a materially adverse action; and (4) there is a causal connection between his protected activity and the

12

material adverse action. *See Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

If the plaintiff establishes a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse action. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Once the employer offers such proof, the burden shifts back to the employee, who "must show that retaliation was a substantial reason for the adverse employment action." *Id.* At step three, the plaintiff must demonstrate "that the desire to retaliate was the but-for cause of the challenged employment action," and if she fails to do so, her claims are dismissed. *See Ya–Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70, 73 (2d Cir. 2015).

"[T]he retaliation inquiry under the [NY]CHRL is 'broader' than its federal counterpart. *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010) (quoting *Williams v. N.Y. City Hous. Auth.*, 872 N.Y.S. 2d 27, 34 (1st Dep't 2009)). Under the NYCHRL, retaliation "in any manner" is prohibited, and "[t]he retaliation ... need not result in an ultimate action with respect to employment ... or in a materially adverse change in the terms and conditions of employment." N.Y.C. Admin. Code § 8–107(7). However, "[t]he functional difference, if any, between the [NY]CHRL standard and that used for federal and state retaliation claims has never been fully articulated." *Fincher*, 604 F.3d at 723.

### b. Application

Here, Plaintiff's retaliation claims fail at step one. Plaintiff argues that she submitted complaints on July 27, 2015 and later on November 2, 2015, and that she was ultimately terminated on December 2, 2015, in retaliation for her complaints. The "materially adverse action" (her termination) occurred four months after her July 27 complaint, and the November 2 complaint occurred *after* the events giving rise to her termination (*i.e.*, the October 27 incident). The circumstantial evidence does not show any "causal connection between [Plaintiff's] protected activity and the material adverse action." *Lore*, 670 F.3d at 157.

Furthermore, even if Plaintiff had made out a prima facie case of retaliation, Defendants have adequately rebutted it by articulating a legitimate non-discriminatory reason for their business decision. Plaintiff engaged in unprofessional conduct on October 27, 2015, which led immediately to her suspension and ultimately to her termination. Plaintiff has not produced evidence to support a rational finding that the "that retaliation was a substantial reason for the adverse employment action." *Jute*, 420 F.3d at 173. Plaintiff fails to raise a triable issue of fact to support a claim under Title VII or even under the more favorable standards of the NYCHRL.

### IV. *Aiding and Abetting*

An individual defendant may also be held personally liable under the NYCHRL if he participates in the conduct giving rise to the discrimination claim. *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009). "However, liability under the [NY]HRL and the NYCHRL must first be established as to the employer/principal before an individual may be considered an aider and abettor." *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F.Supp.2d 477, 490 (S.D.N.Y.1999).

Here, the only defendant alleged to have engaged in discriminatory conduct is Kabir. However, as mentioned above, Kabir's conduct is insufficient to support a claim for

discrimination, hostile work environment, or retaliation. Further, as discussed above, there is no viable claim against the employer/principal. The aiding and abetting claims therefore fail.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted. Oral argument currently scheduled for August 14, 2018 is cancelled. The Clerk shall terminate the motion (Dkt. No. 37), grant judgment in Defendants' favor, dismissing the complaint, with costs to be taxed by the Clerk. The Clerk shall mark the case closed.

SO ORDERED.

Dated: August 7, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge